**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 26 2004**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

In re:

PHILIP G. MCCARTHEY;
THOMAS K. MCCARTHEY;
SARAH J. MCCARTHEY;
SHAUN P. MCCARTHEY;
MAUREEN P. MCCARTHEY,

      Petitioners.

_____

KEARNS-TRIBUNE, LLC;
MEDIANEWS GROUP, INC.;
KEARNS-TRIBUNE CORP.,

      Real Parties in Interest.

No. 03-4269

---

**ON PETITION FOR A WRIT OF MANDAMUS**
**AND A WRIT OF PROHIBITION**

---

Victor R. Marshall and Cindi L. Pearlman, Victor R. Marshall & Associates, P.C., Albuquerque, New Mexico, and Jean E. Dubofsky, Jean E. Dubofsky, P.C., Boulder, Colorado, and E. Barney Gesas, Clyde, Snow, Sessions & Swenson, Salt Lake City, Utah, for Petitioners.

James S. Jardine and Allan T. Brinkerhoff, Ray, Quinney & Nebeker, Salt Lake City, Utah, and Kevin T. Baine, Paul B. Gaffney and Suzanne H. Woods, Williams & Connolly LLP, Washington, D.C., for Real Parties in Interest.

---

Before **SEYMOUR**, **KELLY**, and **BRISCOE**, Circuit Judges.

**KELLY,** Circuit Judge.

This matter arises out a continuing fight over the ownership and control of The Salt Lake Tribune. *See Salt Lake Tribune Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1084-85 (10th Cir. 2003). In response to Petitioners' requests, the presiding judge, United States District Judge Ted Stewart, made various disclosures and repeatedly declined to recuse. Petitioners now seek a writ of mandamus to compel the district judge to fully disclose all facts about (1) his financial contributions to the Church of Jesus Christ of Latter Day Saints ("the Mormon Church"), any duty he may have as a member of the Church to uphold the decisions of its Prophet and First Presidency, and any opinions he may have formed about their credibility; (2) his past dealings with Mormon Church leaders, authorities and officials, including all members of the First Presidency; (3) information he may have garnered about Deseret News Publishing Company's desire to purchase The Salt Lake Tribune between July and October 1999, while Judge Stewart was serving as Utah Governor Leavitt's chief of staff, and any opinions he may have formed about the issue; and (4) any other matters that the parties might consider relevant to the issue of recusal under 28 U.S.C. §§ 144 and 455. They also request a writ of prohibition directing Judge Stewart to take no

-2-

further action in the *Kearns-Tribune* case[1] until complete disclosures have been made in the record and petitioners have been given a reasonable time to consider whether to move for recusal. Because Petitioners have not satisfied their burden to show the right to additional disclosure is clear and indisputable, we deny a writ of mandamus and a writ of prohibition.

Mandamus is an extraordinary remedy, which will issue only upon a showing (1) that petitioner has a "clear right to the relief sought," (2) that the respondent has "a plainly defined and peremptory duty . . . to do the action in question," and (3) that "no other adequate remedy [is] available." *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990); *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995). The petitioner seeking the issuance of a writ of mandamus bears the burden of showing that his or her right to the writ is "clear and indisputable." *Id*. The standards for reviewing petitions for writs of prohibition are similar to the standards for reviewing petitions for writs of mandamus. *See Univ. of Tex. v. Vratil*, 96 F.3d 1337, 1339 (10th Cir. 1996).

---

[1] According to the district court docket sheet in the case underlying this petition, *Kearns-Tribune Corp. v. Philip McCarthey*, No. 2:03cv-00176, was originally assigned to another judge. At MediaNews's request and over Petitioners' objection, Judge Stewart transferred the case to himself and closed it, and all filing is now made through the lead case, *Salt Lake Tribune Publishing Co. v. AT&T Corp.*, No. 2:00cv00936. Petitioners have clarified that they seek a writ of prohibition only in the *Kearns-Tribune* case.

Judge Stewart has disclosed on the record that he has no independent knowledge of any of the events at issue in this case arising from his service in Utah state government or from anything else. He also disclosed that, although he voluntarily contributes to his church, he has no present or contingent financial interest in a party to, or the outcome of, this litigation. He has no leadership position in his church. Finally, he has told the parties that he has no bias or prejudice in favor of or against any party involved in this litigation.

Petitioners have not presented information to the contrary; the record facts simply demonstrate no personal bias or prejudice, nor would a reasonable person knowing these facts harbor doubts about the judge's impartiality. Judge Stewart has addressed Petitioners' concerns regarding actual bias, extrajudicial knowledge of events and persons, and participation in the affairs of a stakeholder. Dissatisfied with his answers, Petitioners' now seek disclosure (essentially, discovery) to supply the factual basis for disqualification. Federal judges already provide detailed financial disclosures and we decline to craft a procedure that essentially will require district judges to submit to discovery (albeit in the form of mandamus directing disclosure) when a party lacks an adequate factual basis for disqualification on non-financial matters.

Disqualification under 28 U.S.C. § 144 places a substantial burden on the moving party to demonstrate that the judge is not impartial, not a burden on the

judge to prove that he is impartial. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). The affidavit of personal bias and prejudice need be timely, sufficient, and accompanied by a certificate of good faith of counsel. 28 U.S.C. § 144. Section 144 provides no basis for what amounts to granting the Petitioners' request for discovery from the district judge. *See Cheeves v. S. Clays, Inc.*, 797 F. Supp. 1570, 1582 (M.D. Ga. 1992) ("Either the alleged bias has already been manifested in some way within the knowledge, information or belief of the party-affiant, or the effort to depose the judge would be a classic fishing expedition.").

28 U.S.C. § 455(a) provides no authority either. Under § 455(c), the presiding judge must "inform *himself* about his personal and fiduciary financial interests." (emphasis added). That duty continues throughout the litigation. *United States v. Greenspan*, 26 F.3d 1001, 1005-06 (10th Cir. 1994). The statute thus places the judge under a self-enforcing obligation to recuse himself where the proper legal grounds exist. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 867-68 (1988); *Davis v. Bd. of Sch. Comm'rs*, 517 F.2d 1044, 1051 (5th Cir. 1975). A judge must make disclosure on the record of circumstances that may give rise to a reasonable question about his impartiality, *see Liljeberg*, 486

U.S. at 866, 868, but we conclude that responsibility has been satisfied in this case given Judge Stewart's responses to Petitioners requests.[2]

Section 455 contains an objective standard: disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality. *Nichols*, 71 F.3d at 351. There must be a reasonable factual basis to question the judge's impartiality. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). The scope of inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. Id. Section 455 does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record. *See Nichols* , 71 F.3d at 351; *Bryce v. Episcopal Church* , 289 F.3d 648, 659-60 (10th Cir. 2002).

Section 455 does not provide for discovery, and no case we have reviewed has endorsed such a procedure. There are sound policy reasons for not requiring a district judge to be a target of discovery. First, a judge cannot testify as a witness in a trial over which he presides. Fed. R. Evid. 605. Had Petitioners truly been interested in following their suspicions, there are several avenues other than obtaining discovery from the presiding judge, e.g., discovery from Governor Leavitt, AT&T, or church officials. Absent some colorable factual basis,

---

[2]     The Real Parties in Interest argue that it is too late for Petitioners to challenge any shortcomings in Judge Stewart's disclosures. We decline to resolve the matter on those grounds.

discovery may not be ordered simply because Petitioners do not believe the presiding judge. *See United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992). As one court has noted in granting a motion to quash a subpoena to take discovery from a presiding judge:

> Embroiling the presiding judge in the adversarial processes of any case is not only unseemly, it is calculated to give rise at the least to a resulting appearance of bias against the aggressor litigant although . . . that species of boot strap bias cannot be recognized, as a matter of law, as a disqualifying circumstance. To do so would simply invite manipulated harassment by any lawyer unscrupulous enough to willingly embark on a course of conduct designed to disqualify an otherwise impartial judge whose views are thought to be adverse to the interests of the client. Such a tactic would, at worst, cause an unjustified voluntary disqualification of the presiding judge or, at least, cause endless delay in the litigation while those maneuvers are in process.

*Cheeves*, 797 F. Supp. at 1582-83.

Finally, we note that merely because Judge Stewart belongs to and contributes to the Mormon Church would never be enough to disqualify him. *Bryce,* 289 F.3d at 660 ("[C]ourts have consistently held that membership in a church does not create sufficient appearance of bias to require recusal."); *Singer v. Waldman*, 745 F.2d 606, 608 (10th Cir. 1984) (refusing to disqualify judge, who was a Mormon, when plaintiff claimed that the case was "a challenge to the theocratic power structure of Utah").

Religious freedom is one of the Constitution's most closely guarded values. *Torcaso v. Watkins*, 367 U.S. 488, 491-92 (1961). The First Amendment

prohibits congressional action respecting an establishment of religion, or prohibiting its free exercise. Article VI, clause 3, provides that all governmental officers be bound by an oath to support the Constitution, and that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." Should we require federal judges to disclose the firmness of their beliefs in religious doctrine, it is a very fine line before we enter the "business of evaluating the relative merits of differing religious claims." *United States v. Lee*, 455 U.S. 252, 263 n.2 (1982) (Stevens, J., concurring); *see also Feminist Women's Health Ctr. v. Codispoti*, 69 F.3d 399, 400 (9th Cir. 1995).

The petition for a writ of mandamus and for a writ of prohibition is DENIED.