The CITY OF NEW YORK, Plaintiff,

v.

EXXON CORPORATION, et al., Defendants.

No. 85 CIV. 1939 (KC).

United States District Court, S.D. New York.

April 12, 1988.

Peter Lehner, New York City Law Dept., New York City, for plaintiff.

Michael M. Gordon, Cadwalader, Wickersham & Taft, Marvin Katz, Thomas P. McCaffey, Arthur Schmauder, Shanley & Fisher, P.C., K. Dennis Sisk, Hunton & Williams, Dennis M. Reznick, McElroy, Deutsch & Mulvaney, Eric M. Wagner, Cole & Deitz, Alan H. McLean, Hughes, Hubbard & Reed, New York City, Jeffrey G. Miller, Verner, Liipfert, Bernhard, McPherson and Hand, Washington, D.C., Sidley & Austin, and Breed, Abbott & Morgan, New York City, for defendants.

OPINION AND ORDER

CONBOY, District Judge.

Certain of the defendants in this case, citing critical public statements made by me during my former service as New York City Investigation Commissioner about aspects of the City's anti-corruption apparatus, assert that these statements, when viewed in the context of defenses and counterclaims raised in the action, would create the appearance of partiality, and, accord-

ingly, they urge me to withdraw from the case. They are careful to emphasize that they in no way assert actual bias.

In such cases of appearances, one might bear in mind the observation of the first century Roman philosopher Epictetus: "Appearances to the mind are of four kinds. Things either are what they appear to be; or they neither are, nor appear to be; or they are, and do not appear to be; or they are not, and yet appear to be. Rightly to aim in all these cases is the wise man's task." (*Discourses*, Circa A.D. 60–100 Chapt. 27; translated, Thomas Wentworth Higginson, Styles & Reed, 1865).

The City of New York ("City") brought this action in 1985 against sixteen corporations seeking recovery of the cost of the control and cleanup of industrial wastes assertedly generated by defendants and illegally disposed of in City landfills. The City alleges that between approximately 1972 and 1980 defendants contracted with one or more waste-hauling companies to remove and dispose of their industrial wastes, and nearly 300 Third Party Defendants have been brought into the case. These waste-hauling companies, it is claimed, illegally dumped defendants' waste in five City landfills, gaining access to them by bribing a former Department of Sanitation ("DOS") employee. The case is presently before the Court on defendant's motion for recusal, pursuant to 28 U.S.C. § 455(a).

I served as Commissioner of Investigation of the City of New York from February 22, 1986 to January 29, 1988. As such, I was head of the City's Department of Investigation ("DOI"). As a reform Commissioner who took office during a widespread and notorious public corruption scandal, my duties required me to respond from time to time to media inquires concerning the nature, adequacy and effectiveness of the City's anti-corruption machinery and programs. Furthermore, my official duties required me to make reports, give advice and testify before official bodies, which submissions sometimes became public, in the context of budget proceedings, hearings on legislative change, and presentations to the Mayor, other Commissioners and officials throughout municipal government. Finally, as a member of the Commission on Governmental Integrity (the Sovern Commission), to which I was appointed by the Governor of New York and on which I served during 1986, I from time to time made public statements on corruption matters during Commission hearings, and I voted for and publicly endorsed its final report to the Governor and the Mayor.

In these contexts, I made numerous public statements critical of the past performance and procedures of both DOI and the City's Inspector General system. Defendants state that in defending against the City's claims and prosecuting their counterclaims, they will present evidence that both DOI and the Inspector General of DOS mishandled investigations into the criminal bribery scheme that is assertedly related to the illegal dumping at issue in this lawsuit. They contend that the failures of DOI and the DOS Inspector General permitted the dumping scheme to continue unimpeded for years, and constitutes negligence on the part of the City, which could be a viable defense to the pendent state law claims herein, and support counterclaims made by the defendants. Because the performance of DOI and the DOS Inspector General ("IG") is at issue, defendants request that I disqualify myself from presiding over this case, since some of my public statements, they assert, appear to be consistent with one of their theories of defense. Defendants also speculate that I may know witnesses in the case and that investigations into illegal dumping may have continued during my tenure as Investigation Commissioner.

It is important to note at the outset that the relevant time period in the complaint upon which this lawsuit is predicated ends in 1980, six years before I assumed my responsibilities as Investigation Commissioner; that the defendants do not assert that I ever expressed any view specifically critical of either the DOS Inspector General's office, or of DOI's handling of any illegal dumping investigation, or that I ever made any statement of any kind relating

to, or even knew about, the illegal dumping investigations in the 1970's that are germane to the defendants claims.

■ The relevant statute, 28 U.S.C. § 455(a), provides that a "judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test under § 455(a) is an objective one. If "a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned," *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987), the judge should disqualify himself despite his subjective belief in his impartiality. Under the rule, close calls are to be decided in favor of recusal. *New York City Housing Development Corporation v. Hart*, 796 F.2d 976, 980 (7th Cir.1986).

Dealing with the somewhat less novel element of the motion first, defendants contend that I may have worked professionally with some of the City witnesses who will testify at trial. At the hearing, defendants' counsel conceded that this is a speculative concern, without reference to specifically identified potential witnesses. Under such circumstances, it is difficult to apply the relevant case law.

■ Under certain circumstances, a judge's relationship with a prospective witness is a proper basis for recusal. For example, in *United States v. Ferguson*, 550 F.Supp. 1256 (S.D.N.Y.1982), Judge Weinfeld disqualified himself from a case where the credibility of a former law clerk was "a vital issue" in the case and the judge described his relationship with his clerk as being "so intimate" that the judge's impartiality might reasonably have been questioned had he presided over the trial. Here, however, defendants do not contest the City's assertion that the investigatory personnel involved in this action are unknown to me, and defendants have, with one exception, failed to identify any prospective witness with whom I have had any contacts. As Judge Weinfeld states in *United States v. Corr*, 434 F.Supp. 408 (S.D.N.Y.1977), "[d]isqualification under section 455(a) must rest upon a *factual* basis. The test under that provision is ...

whether *facts* have been presented that, assuming their truth, would lead a reasonable person to infer that bias or prejudice existed, thereby foreclosing impartiality of judgment." (emphasis added).

■ As to the one prospective witness, former City Sanitation Commissioner Norman Steisel, who defendants identify as having had any association with me, he testified in a deposition to two or three sporadic contacts with me unrelated to any issue in this case, and counsel for defendants conceded during oral argument that Mr. Steisel's limited contacts with me would not be sufficient, standing alone, to create an appearance of partiality.

Furthermore, defendants acknowledge that recusal is not mandated merely by my "years of public service to the City of New York." Yet defendants' speculation that I may know witnesses in this case is based not on my connection to the particular investigations at issue, or even decisively on my service as Investigation Commissioner, but on my "long public service to the City of New York." As defendants concede, "[s]uch a general association between the judge and a particular party or dispute, while relevant to recusal, does not require it." (def.mem. at 5). Such a theory of "general relatively" in recusal cases would, if viable, preclude federal judges with substantial federal, state or municipal service prior to assuming the bench, from sitting in any case in which the relevant Governmental entity is a party.

Defendants speculate that DOI and DOS IG investigations into illegal dumping may have continued during my tenure as Investigation Commissioner. Assuming, for argument's sake, that defendants are correct, there is no suggestion that any such ongoing investigations concerned the events underlying this lawsuit. I note parenthetically that the lawsuit is now almost three years old, that a substantial amount of discovery has been conducted, and that no evidence of a post February 1986 connection exists. The allegedly negligent DOI and IG investigations at issue in this case occurred between 1977 and 1979. John Cassiliano, the DOS employee who permit-

ted the illegal dumping of defendants' waste, was fired in 1982. When I assumed my duties at DOI in 1986, this case was already in litigation and long out of the hands of DOI and the DOS IG. Absent some nexus between my tenure as Investigation Commissioner and DOI or DOS IG investigations into the illegal dumping at issue in this case, recusal is not warranted.[1] *Cf. Barry v. United States,* 528 F.2d 1094 (7th Cir.) (judge's prior position as United States Attorney does not mandate recusal in subsequent criminal case unless the case arose during the judge's tenure in that position), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976).

As defendants' counsel stated during oral argument on the motion, my criticism in the years 1986–87 of procedures at DOI and of the IG system is at the heart of their recusal motion. Defendants contend that "the investigatory competence of both the DOI and the DOS IG are at issue" in this action. The implied conclusion is that whatever findings I make relative to issues of competency raised at trial, the reasonable perception will be that those decisions were shaped by my prior public statements. The issue before the court, however, will not be the general competence of DOI or the DOS IG in 1986, but whether *particular* officials or agents negligently blundered *particular* investigations in the late 1970's. I am not convinced that my general views on the condition of the agencies in question when I took office in 1986 creates the appearance that I will be partial in determining whether two discrete investigations, occurring approximately 8 years before my arrival at DOI, were bungled.

I recognize and emphasize that defendants' concerns are not frivolous and their decision to raise this issue at the earliest possible stage of my involvement in this case is commendable. Nonetheless, recusal based on the factual record developed on this motion would be contrary to the authorities cited by both parties, and would establish a harmful precedent for myself and for the many other judges who come to the bench after long careers in public service.

If *general* criticism prior to judicial service by responsible officials in public office of, for example, conditions of confinement in jails, prisons or reformatories; of criminal justice procedural inadequacies that might be a grounding for habeas corpus; of practices or policies as acts of state that might portend potential liability in civil rights claims; of administrative deficiencies in the immigration, securities regulation, tax enforcement or environmental protection fields relating to federally created rights, requires recusal *without* reference or connection to concrete or specific matters that underlie the case before the Court, then a major impediment to the disposition of the business of the federal courts would be imposed.

On the record before me, I find no basis for recusal under § 455(a). Accordingly, the defendants' motion is denied.

SO ORDERED.

---

1. For the same reasons, my general knowledge of facts and procedures concerning DOI and the DOS IG is not a sufficient basis for recusal. *Cf. National Auto Brokers v. General Motors Corp.,* 572 F.2d 953 (2d Cir.1978) (judge who had previously written an opinion letter for corporate litigant before the court was not required to recuse himself when letter concerned matter unrelated to the litigation), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).