Jennifer GERMAN and Wellington German, Infants by their Mother and Natural Guardian Ana Maritza German, and Ana Maritza German, Individually, Plaintiffs,

v.

FEDERAL HOME LOAN MORTGAGE CORP., et al., Defendants.

No. 93 Civ. 6941 (RWS).

United States District Court, S.D. New York.

Oct. 31, 1996.

Fitzgerald & Fitzgerald, P.C., Yonkers, NY, (John M. Daly, John E. Fitzgerald, Deborah P. Henkin, James P. McCarthy, Ronald Simon, of counsel), for Plaintiffs.

Jeffrey D. Friedlander, Acting Corporation Counsel of City of New York, New York City, (John R. Low–Beer, of counsel), for Defendant City of New York.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Paul J. Bottari, of counsel), for Defendant New York City Housing Authority.

Jones, Day, Reavis & Pogue, New York City (Elaine H. Mandelbaum, of counsel), for Defendants Lead Industries Association, Inc., NL Industries, Inc., Atlantic Richfield Company, The Sherwin–Williams Company, SCM Corporation, The Glidden Company and The O'Brien Corporation.

*OPINION*

SWEET, District Judge.

Defendants Lead Industries Association Inc., NL Industries, Inc., Atlantic Richfield Company, The Sherwin–Williams Company, SCM Corporation, The Glidden Company

and The O'Brien Corporation (collectively, the "manufacturer defendants") have moved for recusal pursuant to 28 U.S.C. § 455 ("Section 455"), based on their intent to raise, as a defense to cross-claims brought by defendant the City of New York ("the City"), the City's policy regarding lead paint poisoning between 1967 and 1969, at which time I served as Deputy Mayor of the City. For the reasons set forth below, the motion is granted with regret.

### Background

The parties, facts and prior proceedings are fully described in earlier opinions of this Court, familiarity with which is assumed. *See German v. Federal Home Loan Mortgage Corp.*, 1994 WL 319154 (S.D.N.Y. June 28, 1994) (*German I*); *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537 (S.D.N.Y.1995) (*German II*); *German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385 (S.D.N.Y.1995) (*German III*); *German v. Federal Home Loan Mortgage Corp.*, 899 F.Supp. 1155 (S.D.N.Y.1995) (*German IV*); *German v. Federal Home Loan Mortgage Corp.*, 899 F.Supp. 1155 (S.D.N.Y. June 25, 1996) (*German V*). A review of those parties, facts and prior proceedings relevant to this motion is presented below.

On July 26, 1993, Ana Maritza German, on behalf of her children Wellington and Jennifer German, instituted this action in Supreme Court, Bronx County, against Freddie Mac and several other entities involved in the management of the building in which the Germans reside. The complaint sought damages for personal injuries to the infant Germans resulting from lead paint exposure, and sought relief for Ana German in her individual capacity as mother and natural guardian of the infant plaintiffs.

Pursuant to 28 U.S.C. § 1446(b), Freddie Mac, as an entity created by federal legislation, removed the action to this Court on October 5, 1993.

On August 22, 1994, the Goffins, a mother and her two minor children living in Freddie Mac owned housing, filed an intervenor complaint seeking individual and class relief. Pursuant to this Court's opinion, dated June 28, 1994, granting plaintiffs' motion to amend the Complaint, the City of New York (the "City") was added as a defendant in this action based on its prior ownership of the building in which the Germans reside. *See German I*.

A second amended complaint was filed on September 16, 1994, in which the plaintiffs sought class certification and an order requiring defendants to take steps necessary to protect from lead poisoning young children living in buildings owned or managed by defendants, or in buildings to which defendants administered federal funds.

On September 29, 1994, the Germans and the Goffins filed a motion seeking class certification. Motions to dismiss and for partial summary judgment were also filed by all the defendants in September 1994. On May 8, 1995, the Court filed an opinion granting in modified form plaintiffs' motion for class certification. The Court certified the class of children under seven residing in buildings owned, managed or operated by defendants, or where they administer federal funds. *German II*, at 561. The class was certified as against the City as a public housing administrator of funds with respect to the Germans' claims, and as against Freddie Mac as an owner and the New York City Housing Authority ("NYCHA") as an administrator of funds with respect to the Goffins' claims. *Id.* The Opinion filed May 8 also granted defendants' motions to dismiss plaintiffs' state claims based on theories of negligence *per se*, strict product liability, and liability for ultrahazardous substances. Defendants' motions to dismiss the remaining state causes of action were denied.

By Opinion dated August 22, 1995, the Court granted a motion to intervene filed by the David family and denied motions by the City and Freddie Mac to reargue the class certification motion. *German III*, at 1391–92. On September 15, 1995 the Court granted a motion to intervene by the Franklin family. *German IV*. By Opinion date June 26, 1996, the Court granted plaintiffs' motion to add class representatives, granted in part plaintiffs' motion to amend the class definition, and denied, with leave to renew, plaintiffs' motion to require notice to the class. *German V*. Pursuant to *German V*, the

class was expanded to include children under seven and pregnant women residing in City-owned housing.

Pursuant to this Court's order of December 8, 1995, Kaii Henry and her children Naiya Thomas and Naquan Thomas (the "Henry plaintiffs") filed an intervenor complaint in this action on January 12, 1996 ("the Henry complaint"). The Henry complaint includes claims against the manufacturer defendants—manufacturers of lead pigment used in lead paint—for products liability, negligence and fraud. The Henry plaintiffs seek certification of a class of all children under seven and all pregnant women residing in the City who live in housing "containing or presumed to contain lead-based paint or lead-based paint hazards." The Henry plaintiffs seek to establish Court-administered medical monitoring and abatement funds, to which all defendants, including the manufacturer defendants, would contribute.

The City and NYCHA are also named as defendants in the Henry plaintiffs' intervenor complaint, and have asserted cross-claims for indemnity and contribution against the manufacturer defendants, which mirror the City's and NYCHA's claims as plaintiffs against the manufacturer defendants in *City of New York v. Lead Industries Assn., et al.,* Index No. 14365/89, 1991 WL 284454, pending in New York County Supreme Court (the "State Court Action").

Currently *sub judice* before this Court are motions to dismiss filed by certain manufacturer defendants, a motion for summary judgment filed by the O'Brien Corporation and American Cyanamid, a motion to dismiss the City's and NYCHA's cross-claims filed by the manufacturer defendants, and motions to compel discovery filed by the manufacturer defendants and the City. Upon the filing of the instant motion to recuse, the Court granted, over plaintiffs' objections, the manufacturer defendants' request to adjourn all pending motions until resolution of the instant motion.

### The Background of the Motion to Recuse

I served as Deputy Mayor of the City in the administration of Mayor John V. Lindsay from 1967 to 1969. By the late 1960's, the City was aware of the alleged hazards of peeling or flaking lead paint to children. In 1954, the City had enacted a regulation requiring warning labels on lead paint containers. Sanitary Code § 230d. In 1959, the City had banned the use of lead paint on the interiors of dwellings because of the perceived hazards to children, and gave the Health Department legal authority to order abatement of lead paint. Health Code § 173.13(c), (d)(1).

During my service as Deputy Mayor, the childhood lead poisoning issue received attention at the highest levels of the Lindsay administration. In August 1996, the manufacturer defendants took the deposition of Werner H. Kramarsky ("Kramarsky"), who was Assistant and then Special Assistant to Mayor Lindsay from 1966 to 1969 with responsibility for health matters. (Tr. 12:2–6, 17:9–17). Kramarsky recalled that he "worked very closely" with me when I was Deputy Mayor. (Tr. 20:2–6). He testified that he discussed lead poisoning issues with Mayor Lindsay, myself, and other assistants to Mayor Lindsay. (Tr. 22–23, 48:21–50:17, 90–93, 105–106, 118–125). Kramarsky specifically recalled that he asked me to use my authority as Deputy Mayor to have the Budget Bureau transfer $150,000 to begin a lead poisoning "research project" in the Health Department. (Tr. 51:9–54:13, 55:1–56:16). (Tr. 124:24–125:21).

By letter dated February 24, 1967, Health Commissioner O'Rourke wrote to me regarding the need to incorporate into the "Grad Code" for housing the City Health Code provisions pertaining to lead paint, stating:

> We note that Article 12 dealing with the painting of residential space makes no reference to prohibition against the use of lead paint and further that where deemed necessary that previously applied lead paint be removed. This is particularly important in the instances where pica children who have had a history of plumbism not be exposed again to the effects of lead paint on the walls of their living quarters. Section 173.13 of the Health Code makes provision for this control. There should be some indication of this either by adopting

the Health Code provision or referring to it.

On January 15, 1970, section 173.13 of the New York City Health Code was enacted. This was the first City legislation to impose an obligation on the City Health Department to order property owners to abate, and to require the Department of Health ("DOH") to request New York City's Department of Housing Preservation and Development to abate.

On October 2, 1996, the manufacturer defendants filed the instant motion to recuse, asserting that they intend to interpose, as a defense against the City's cross-claims, the defense that the City's own negligence in discharging its duties during the 1950's, 1960's and 1970's contributed to the lead paint hazards and injuries now alleged by plaintiffs. The manufacturer defendants contend that such a defense will implicate the City's liability for action and inaction during the period when the I served as Deputy Mayor in the Lindsay administration, and that as a consequence recusal is required pursuant to § 455.

Plaintiffs oppose the motion to recuse. The City takes no position with respect to the motion but submitted a memorandum of law asserting that the manufacturer defendants' intended defense to the City's cross-claims—*i.e.*, that the City's conduct regarding lead paint hazards was a cause of the injuries now claimed by plaintiffs—is utterly devoid of merit. Oral argument was heard on October 2, 1996, at which time the recusal motion was considered fully submitted.

### *Discussion*

### I. *The Legal Standard for Recusal*

28 U.S.C. §§ 455(a) and (b)(1), provide:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) [A judge] shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

The test under Section 455(a) is "an objective one, which assumes that a reasonable person knows and understands all the relevant facts." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). If that person, "knowing all the facts, would conclude that the court's impartiality might reasonably be questioned," *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987), the judge should disqualify himself despite his subjective belief in his impartiality. Under the rule, close calls are to be decided in favor of recusal. *City of New York v. Exxon Corporation*, 683 F.Supp. 70, 72 (S.D.N.Y.1987) (citing *New York City Housing Development Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir.1986)).

### II. *Recusal is Required Under These Circumstances*

The manufacturer defendants presently intend to raise the defense that, during the 1960's, the City knew of—but did not take sufficient action to remedy—the alleged hazards of lead paint to children, and that the City's failure to act during that period contributed to the present lead hazard in the homes of plaintiffs and putative class members and that if the City had devoted sufficient resources to enforcement in the 1950's, 1960's or 1970's, lead paint applied in residences before then would not currently present the hazard alleged by plaintiffs. Furthermore, the manufacturer defendants now contend that any hazard that may exist was caused or exacerbated by negligent maintenance and lax code enforcement by the City, NYCHA and other landlords, which allowed paint to peel or chip and thereby become accessible to children. The City has already disputed these contentions.

Manufacturer defendants have indicated that they will seek extensive document discovery and depositions of present and former City and NYCHA employees, and that, because of my service as Deputy Mayor during the late 1960's, I am a potential witness in this action.

As pointed out by the plaintiffs in opposition to the motion, the manufacturer defen-

dants have not shown that I possess any unique knowledge of the City's involvement in lead paint issues—as distinguished from that of other present and former administration officials—that would make me an essential witness in this action. In fact, I have little, if any, present recollection concerning the issue.

Also, according to plaintiffs, the only conduct of the City relevant to this action is its conduct after January 15, 1970, when section 173.13 of the New York City Health Code was enacted, because this was the first provision to imposed a legal obligation on the City to abate lead paint hazards.[1] In addition, plaintiffs argue that the irrelevance of the City's pre–1970 activity is demonstrated by the fact that the City only acquired ownership of the housing at issue in 1978, well after my service to the City ended. Plaintiffs contend that manufacturer defendants' argument concerning the City's role between 1966 and 1969 has been improperly injected into this action in a bad faith attempt to orchestrate this Court's recusal from this matter.

Further, the plaintiffs assert that claims regarding the failure of the City to budget sufficient funds or enact appropriate legislation in the late 1960's regarding lead poisoning are nonjusticiable. *See Matter of Bezio*, 62 N.Y.2d 921, 924, 479 N.Y.S.2d 6, 467 N.E.2d 890 (1984) ("To the extent that [parties] seek to enforce rights under pertinent statutes as distinct from litigating the wisdom of the ... policy underlying the treatment they are receiving, they may be able to state a cause of action.") While the timing and the nature of the manufacturer defendants' intended argument may support an inference that the manufacturer defendants are judge-shopping, I may not assess the merits of the very defense of which I am alleged to have personal knowledge.

Recusal is mandated where "a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple*, 829 F.2d at 333. Given the nature of my responsibilities as Deputy Mayor during the period in question,

my impartiality could reasonably be questioned if I were to deny the instant motion and proceed to adjudicate the merits of manufacturer defendants' defense to the City's cross-claims.

Accordingly, recusal is required here, notwithstanding my confidence that I could in fact preside impartially over all aspects of this action, as I have done since this action was filed in 1993. As the Honorable Raymond J. Dearie noted in recusing himself from a criminal case begun when he was United States Attorney,

> This result obtains even though I harbor no personal predisposition regarding the merits of the case and I am confident that I could in fact preside impartially.

*United States v. Pepper & Potter, Inc.*, 677 F.Supp. 123, 126 (E.D.N.Y.1988). *See also Liteky v. U.S.*, 510 U.S. 540, 548, 114 S.Ct. 1147, 1154, 127 L.Ed.2d 474 (1994) ("what matters is not the reality of bias or prejudice but its appearance").

Finally, recusal is appropriate even though I have no present recollection of its involvement in the lead poisoning issue during my service as Deputy Mayor. *See Pepper & Potter*, 677 F.Supp. at 124 (granting recusal motion although judge had "no current recollection of the extent of my participation in the underlying investigation"); *Limeco, Inc. v. Division of Lime*, 571 F.Supp. 710 (D.Miss.1983) ("To say that one has no present recollection falls short of meeting the acid test required of a judge whose impartiality may be reasonably drawn into question"). *Id.* at 711.

Crucial distinctions exist between this case and the cases relied on by plaintiffs where recusal was denied based on an insufficient showing of the relevance of the court's activities to the issues in litigation. In *In Re Wyoming Tight Sands Antitrust Cases*, 726 F.Supp. 288, 291–92 (D.C.Kan.1989), the judge had previously testified in support of natural gas development, and that testimony was to be offered as background information in the litigation before the judge. The court

---

**1.** Prior to that date, the City Department of Health was only authorized to require property owners to remove lead paint.

found that because the testimony did not relate to "disputed evidentiary facts," recusal was not warranted.

In *New York v. Exxon Corp.*, 683 F.Supp. 70 (S.D.N.Y.1988), relied upon by plaintiffs, the City had sued defendant corporations to recover industrial waste clean-up costs. The defendants planned to argue that the Department of Investigation's failure to properly investigate illegal dumping provided the basis for defenses they planned to raise against the City. *Id.* at 72. The judge in that case, the Honorable Kenneth Conboy, was a former Commissioner of the New York City Department of Investigation, and had been critical of the Department of Investigation's procedures during his tenure there. *Id.* at 71.

Defendants argued that recusal was necessary because it could appear that the judge's decision was shaped by his prior public statements. Judge Conboy rejected this argument, finding that, because "the relevant time period in the complaint upon which this lawsuit is predicated ends in 1980, six years before" Judge Conboy's tenure began, his general views did not provide enough of a nexus to the specific investigations at issue. *Id.* at 73.

Plaintiffs contend that the passage of some thirty years time since my participation in an event indicates that my impartiality could not reasonably be questioned. *See Massachusetts School of Law v. American Bar Ass'n*, 872 F.Supp. 1346, 1349 (citing *Cippolone v. Liggett Group*, 802 F.2d 658, 659 (3d Cir. 1986)); *Washington Heights—West Harlem—Inwood Mental Health Council, Inc. v. District 1199*, 586 F.Supp. 1251, 1253 n. 1 (S.D.N.Y.1984), *rev'd on other grounds*, 748 F.2d 105 (2d Cir.1984), (acquaintance with board member of litigant in mid–1960's too distant in time and relevance to require recusal).

Nonetheless, the cases in which the passage of time has been held to militate against recusal do not involve a judge's previous participation in the actions in dispute in the present litigation. Rather, those cases involve a judge's previous acquaintance with an individual, *see Washington Heights,* 586 F.Supp. at 1253 n. 1, or a judge's prior personal involvement with a similar but entirely unrelated case. *See Massachusetts School of Law*, 872 F.Supp. at 1349.

### Defendants' Motion Will Not be Denied as Untimely

Plaintiffs argue that defendants' motion should be denied as untimely, as defendants have been in this case since January 1996, and in the state action for approximately seven years, and only now move for recusal. Plaintiffs contend that if defendants' motion were brought in good faith, it would have been brought years ago when they presumably learned, through discovery in the state action, of my former position in City government.

Manufacturer defendants, however, only took the Kramarsky deposition in August of this year, and it was apparently only upon the taking of that deposition that defendants became aware of my role in the Linsday Administration's handling of the lead paint poisoning issue. Accordingly, defendants will not be faulted for bringing the motion at this late stage of these proceedings, and their motion will not be denied as untimely.

### Conclusion

This Court has devoted a great deal of time and energy to resolving the many complex issues to which this action has thus far given rise. Five written opinions have been issued in this case. Four sets of plaintiffs have been granted leave to intervene. One class has already been certified and amended, and a second class is proceeding to certification presently. The Court has issued a case management order in an attempt to organize the complex discovery process.

Furthermore, the parties to this litigation have fully submitted, and are prepared to argue, several motions to dismiss and for discovery. *See Royal Air Maroc v. Servair, Inc.*, 603 F.Supp. 836 (S.D.N.Y.1985) (Sweet, J.) (recusal would "will serve the interests of justice ... at this time, given the fulsome submissions and arguments presented."). The Court thus grants the instant motion with great reluctance, and only because this result is compelled by the possibility under these circumstances that my impartiality might be questioned in face of the availability

in this multi-judge court of other judges not similarly burdened by past history.

For the reasons set forth above, the manufacturer defendants' motion is hereby granted.

It is so ordered.