Argued and submitted November 20, 1995, reversed in part; otherwise affirmed June 19, petition for review denied December 17, 1996 (324 Or 487)

In the Matter of the Marriage of

Barbara Anne BENSON,
*Respondent,*

*and*

John Sumner YOUNGBLUTT,
*Appellant.*

(92C-36116; CA A86923)

919 P2d 496

Gordon L. Dick argued the cause for appellant. With him on the brief was Wheeler and Dick.

John Hemann argued the cause for respondent. With him on the brief was Garrett Hemann Robertson Paulus Jennings & Comstock, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Husband appeals a dissolution judgment, assigning error to the denial of his motion to disqualify the trial judge, to the court's award of custody and visitation, to its allocation of the "dependency exemption," and to its award of costs and attorney fees to wife. We reverse as to the award of costs and affirm in all other respects.

Husband, age 50, and wife, age 40, were married in June of 1991. Wife became pregnant, but, one month before delivery of their child, the parties separated and commenced this dissolution action. The child has lived with wife since birth.

The case originally was assigned to Judge McConville. Before trial, the parties appeared before Judge Rhoades for a settlement conference. The settlement efforts apparently were not entirely successful, and the case was then assigned to Judge Barlow. Husband filed a motion to disqualify Judge Barlow. In his affidavit in support of the motion, husband alleged:

"I determined that this proposed change in judges would be the third. * * * I am also concerned that Judge Barlow is not familiar with the case, and does not have any history with our case as did Judge McConville and Judge Rhoades.

"It was my understanding that if we went before Judge Rhoades with the settlement conference, that she then would in fact be the trial judge. We spent almost the entire day with Judge Rhoades and it is my feeling that her familiarity with the matter will aid in speeding up the trial process.

"Lastly, it is my feeling that to have a judge who is unfamiliar with the case and who is a District Court Judge and unfamiliar with custody matters, would be to place [child's] welfare at risk."

Judge Barlow denied that motion. Among other things, Judge Barlow concluded that the motion was legally insufficient because there was no allegation in the motion or the supporting affidavit that anyone believed that husband could

not obtain a fair and impartial trial or hearing before him. An order to that effect was not entered, however.

Unaware that Judge Barlow had decided to deny the motion, husband filed that same day an "amended" motion to disqualify. The new motion was identical to the earlier motion in all respects, save one; the affidavit accompanying the new motion contained a new paragraph:

"Lastly, it is my feeling from all of the contacts that I have had with the various different people, that Judge Barlow would be biased towards having women awarded custody of the children and I feel that I could not receive a fair and impartial trial before Judge Barlow. I am not filing this Motion for the purpose of delay * * *."

Judge Barlow contested the amended motion to disqualify. He filed an affidavit stating:

"I denied [husband's] first motion on the grounds that it contained no basis for disqualifying me. Thereafter [husband] filed the amended motion.

"It is my contention that the motion and affidavit are improper and do not constitute a ground or grounds for disqualification. The first motion and affidavit does not allege that respondent cannot receive a fair trial, it simply asks that the case be tried by another judge. The [second] motion was filed after the ruling made on the first motion and simply adds the statutory language that the party cannot have a fair or impartial trial before me.

"That I have never tried a case before the lawyer representing [husband] nor am I acquainted with the parties. That I have tried custody cases when I have given custody to both father and mother.

"It is my belief that as revealed by the affidavit in the first motion, the motions are not made in good faith and are simply for the purpose of allowing [husband] and his attorney to select his judge."

A hearing on the motion to disqualify was held before Judge Abernethy. At the hearing, Judge Barlow explained further that he believed the motion to have been filed in bad faith because the first motion merely alleged that husband wanted the judge of his choice and the second motion merely added a phrase that he could not receive a fair

and impartial trial. In his opinion, the affidavits demonstrated "purely and blatantly an attempt to judge shop."

Judge Abernethy denied the amended motion to disqualify. She found that "there's something other than the procurement of fair adjudication going on here," and that husband had attempted to use the motion to disqualify as a mechanism to obtain the judge of his choice:

> "I'm ruling on the * * * ground[] that the circumstances with respect to the original then the Amended Motion strike me as a—put this in the context of what we used to call a peremptory challenge. * * * [T]he [disqualification] statute is not meant to be interpreted equivalent to the old peremptory challenge where you could get a judge off the case for any other reason."

The case was then tried before Judge Barlow. The court awarded wife custody of the child and allowed husband visitation in accordance with a specified schedule. The court awarded wife the right to claim the child as an exemption for tax purposes. It also awarded wife attorney fees, including deposition costs.

On appeal, husband challenges the trial court's decisions with respect to evidentiary decisions at trial, child custody and visitation, and the award of the right to claim the dependency exemption. We affirm the trial court without discussion as to those assignments.

Husband also argues that Judge Abernethy erred in denying his motion to disqualify Judge Barlow. He argues that there was no evidence that he brought the motion in bad faith. He further argues that, once Judge Barlow had determined that husband had acted in bad faith, *that* finding rendered the judge incapable of deciding the case in a fair and impartial manner, as a matter of law.

Wife argues that Judge Abernethy correctly denied the motion to disqualify. She first contends that the initial motion was correctly denied, because it was legally deficient, lacking any allegation that husband could not have obtained a fair and impartial trial from Judge Barlow. She then argues that the amended motion was correctly denied, because it

was untimely—the judge already having denied it—and because it was, in fact, made in bad faith.

Husband responds that the amended motion could not fairly be considered untimely, because no order had been entered denying the first motion and he had not otherwise been informed of the trial court's decision. We need not determine whether the amended motion was timely filed, because even if it was, it was correctly denied.

Under ORS 14.250, any party or attorney who believes that he or she "cannot have a fair and impartial trial or hearing" before a judge may move to disqualify that judge. The party or attorney may establish that belief

> "by motion supported by affidavit that such party or attorney believes that such party or attorney cannot have a fair and impartial trial or hearing before such judge, and that it is made in good faith and not for the purpose of delay. No specific grounds for the belief need be alleged. Such motion shall be allowed unless the judge moved against, or the presiding judge for the judicial district, challenges the good faith of the affiant and sets forth the basis of such challenge. In the event of such challenge, a hearing shall be held before a disinterested judge. The burden of proof shall be on the challenging judge to establish that the motion was made in bad faith or for the purposes of delay."

ORS 14.260(1).

In *State ex rel Kafoury v. Jones*, 315 Or 201, 843 P2d 932 (1992), the Supreme Court held that the proper inquiry under the disqualification statute is

> "the moving party's *belief* in the fairness and impartiality of the judge, not the judge's actual fairness and impartiality."

*Id.* at 207 (emphasis in original). The court also explained that, to establish that the moving party has brought the motion in "bad faith," it must be shown that

> "the primary aim of the motion is something other than the procurement of the fair adjudication of the action."

*Id.* at 209. The question in this case, then, is whether Judge Abernethy correctly determined that husband brought his

motion to disqualify for reasons "other than the procurement of the fair adjudication of the action."

At this juncture, the question arises as to the appropriate standard of review of Judge Abernethy's findings in that regard. The parties have not briefed the matter; both appear to assume that, because this is an appeal in a domestic relations matter, we review the court's decision *de novo*. Our own cases are not entirely harmonious. In *State v. Nossaman*, 63 Or App 789, 793-95, 666 P2d 1351 (1983), we reviewed a trial court's denial of a motion to disqualify, brought under an earlier version of ORS 14.250, as a matter of law. We reasoned that "it is actually the legal sufficiency of the affiant's evidence that is determined at the hearing." *Id.* at 793. In *Palmerton and Palmerton*, 63 Or App 701, 706, 666 P2d 285 (1983), however, we affirmed a trial court's denial of a motion to disqualify, brought under the same version of the statute, because we found that the court had not abused its discretion in doing so.

■ In *Kafoury*, the Supreme Court reviewed a trial court's denial of a motion to disqualify, brought under a more recent version of the statute, on a petition for a writ of alternative mandamus. The trial court found that the motion had been brought in bad faith. The Supreme Court characterized that decision as a finding of fact, which it reviewed for any evidence. *Kafoury*, 315 Or at 212. We can identify no reason to apply a different standard of review in this case.[1] Accordingly, we review for any evidence supporting Judge Abernethy's determination that husband brought his motion to disqualify for reasons other than the procurement of a fair and impartial adjudication of the action.

■■ That inquiry is not difficult. There is evidence in the record that the sole reason for requesting disqualification was that husband wanted Judge Rhoades to try the case. The first motion to disqualify says that and nothing more. It is well established that litigants have no right to shop for a judge of their choice. *See State ex rel Oliver v. Crookham*, 302 Or 533, 537, 731 P2d 1018 (1987).

---

[1] Based upon a concession of counsel for the defendant judge, the Supreme Court concluded that there was, in fact, no evidence that the motion to disqualify had been brought in "bad faith."

Husband's arguments to the contrary are unavailing. His argument that there is a complete lack of evidence that he brought his motion for reasons other than procurement of fair adjudication is simply incorrect, as we have noted. His argument that Judge Barlow's bias was conclusively established once Judge Barlow stated that the motion was brought in bad faith is similarly unpersuasive.

To begin with, the argument is inconsistent with our standard of review. Moreover, the argument makes no sense. It simply does not follow that, once having determined that a party took some action in bad faith, that the judge making that determination cannot thereafter rule impartially on the balance of the case. If that were so, then every time a trial judge imposed sanctions for a discovery violation, the case would need to be reassigned to another judge. Indeed, if husband is correct that a finding of bad faith conclusively establishes a lack of impartiality, then no trial judge ever can deny a motion to disqualify; once having determined that there exist grounds for denial, the judge always would have to disqualify himself or herself. Husband cites us no enacted language or other evidence that the legislature intended such a statutory "Catch-22."[2] We conclude that Judge Abernethy did not err in denying husband's motion to disqualify Judge Barlow.

Husband also assigns error to the trial court's award of costs and attorney fees to wife. He argues that wife should have been awarded no fees. He also argues that, even if she is entitled to fees, ORCP 68 A(2) prohibits an award of costs for deposition expenses. Wife argues that the trial court did not err in awarding fees or deposition expenses. According to

---

[2]  "There was only one catch and that was Catch-22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to. Yossarian was moved very deeply by the absolute simplicity of this clause of Catch-22 and let out a respectful whistle.

" 'That's some catch, that Catch-22,' he observed.

" 'It's the best there is,' Doc Daneeka agreed."

Joseph Heller, *Catch-22*, 47 (Dell paperback ed 1955).

wife, an award of fees in a domestic relations proceeding is reviewed for an abuse of discretion, and there is no such abuse under the facts of this case. In addition, she argues, under ORS 107.105(1)(i), the trial court is authorized to award deposition costs as part of "costs and expenses of suit or defense * * * the court finds reasonably and necessarily incurred." Wife argues that ORCP 68 is not to the contrary, because the rule "merely provides a procedure to follow in divorce cases" for awarding fees and costs.

■    We review the trial court's decision to award attorney fees for abuse of discretion. *Haguewood and Haguewood*, 292 Or 197, 212, 638 P2d 1135 (1981). We conclude, without further explanation, that the trial court did not abuse its discretion in deciding to award wife attorney fees. We turn, therefore, to the question of whether the court appropriately included, in addition to attorney fees, deposition expenses.

■■    ORS 107.105(1)(i) provides that the court may award "attorney fees or additional costs and expenses of suit or defense as the court finds reasonably and necessarily incurred." That statute, as any statute, must be read in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). The context includes other statutes on the same or similar subject. *Id.* In this case, the context of the attorney fee statute includes ORCP 68, which defines "reasonable and necessary expenses" for the purposes of attorney fee awards in civil cases. The rule provides:

> " 'Costs and disbursements' are reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services * * *. The expense of taking depositions shall not be allowed, even though the depositions are used at trial, except as otherwise provided by rule or statute."

ORCP 68 A(2). Clearly, the rule does not merely provide a procedure for awarding fees and costs; it specifically prohibits an award of deposition costs, "except as otherwise provided by rule or statute." Wife cites no rule or statute, and we are aware of none, that specifically allows an award of deposition costs, notwithstanding ORCP 68 A(2). We conclude that the trial court erred in awarding deposition costs to wife.

Judgment awarding wife costs of depositions reversed; otherwise affirmed. Costs to husband.