UNITED STATES of America,

v.

**Harold ROEBUCK, Defendant.**

**No. CR.2002/0171.**

District Court, Virgin Islands, D. St. Croix.

July 15, 2003.

Isabel Munoz, Esq., Special Attorney to the Attorney General, United States Attorney's Office, Hato Rey, PR, Special Attorney for Chief Judge Raymond Finch, Judge Thomas Moore, Judge Geoffrey Barnard, and Judge Jeffery Resnick with respect to the within Motion.

Ernest Batenga, Esq., Assistant United States Attorney, United States Attorney's Office, St. Croix, USVI, for United States of America.

Lee J. Rohn, Esq., Law Offices of Lee J. Rohn, Jeffery Moorhead, Esq., St. Croix, USVI, for Defendant Harold Roebuck.

## OPINION ON GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

BROTMAN, District Judge (sitting by designation).

This matter comes before the Court on the Government's motion to quash subpoenas to compel the testimony of four federal court judges at an evidentiary hearing to recuse Judge Moore from presiding over this criminal case. The Government also seeks a protective order to prevent the service of further subpoenas seeking similar information. It is Defendant's contention that the judges' testimony is necessary to create a factual record in support of his Motion to Recuse. Because the inquiry into the mental process of a judge is prohibited, even if the inquiry is factually directed, the Government's motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The charges in this case, Criminal No.2002/0171, stem from an incident on September 27, 2002, when Defendant Harold Roebuck ("Defendant Roebuck") allegedly assaulted Deputy United States Marshal Linda I. Valerino with a pipe while she was engaged in the performance of her official duties. While the criminal case arises out of this alleged attack, to understand the basis for Defendant's argument that the subpoenas in question are necessary to support Judge Moore's disqualification, it is necessary to provide a short history of the underlying events leading up to Defendant's Motion to Recuse.

### 1. The St. Croix Source Letter to the Editor

In August 2002,[1] Attorney Lee Rohn, wrote a letter to the editor of the St. Croix Source, an on-line newspaper,[2] expressing her view that Judge Thomas Moore should not be reappointed to his position as District Court Judge in the Virgin Islands.[3]

---

1. The exact date of the letter's publication has not been provided.

2. The St Croix Source is not a printed publication, and can only be accessed through its website at http://new.onepaper.com/stcroixvi/. (June 3, 2003 Tr. at 7–8.)

3. Judges sitting in the District Court of the Virgin Islands are not Article III judges and, therefore, lack life tenure. *See* 48 U.S.C. § 1611 (2002). The Court is an Article I court and the District Court Judges are appointed for ten (10) year terms. *See* 48 U.S.C. § 1614(a); *see also United States v. Canel*, 708

(Def.'s Ex. D.) The letter, which was not the first clash between Judge Moore and counsel,[4] was highly critical of Judge Moore's judicial performance and described alleged incidents of inappropriate behavior while on the bench.[5] (*Id.*) The letter concluded that Judge Moore lacked "the judicial temperament needed for the position" of District Court judge. (*Id.*) During the same time frame that the letter was published, Attorney Rohn represents she was also actively engaged in discussions with leaders of the Republican National Committee, members of President George W. Bush's administration, and members of the Senate Judiciary Committee voicing her opposition to Judge Moore's reappointment. (June 3, 2002 Tr. at 6:19–20.)

### 2. Judge Moore's Recusals in Attorney Rohn's Cases

Beginning on September 9, 2002, and continuing through October, Judge Moore *sua sponte* recused himself from all cases pending before him where Attorney Rohn or her firm was counsel of record. These one-line Orders give no reason for Judge Moore's recusal. Attorney Rohn speculates that the recusals were a direct result of Judge Moore reading the August 2002 letter to the editor and being angry at her for its contents. (Def.'s Mot. for Judicial Recusal at 3). Specifically, Attor-

ney Rohn alleges "Judge Moore made numerous statements to multiple person[s] as to his anger and negative reaction to the letter" and that "it was widely known within the community that Judge Moore became visibly upset with Attorney Rohn and had lost all objectivity with regard to the cases in which she was the attorney of record." (Def.'s Mot. for Judicial Recusal at 3; see also May 21, 2003 Tr. at 21:7–14.) Additionally, she claims Judge Moore was aware of her involvement "in the politics which prevented his reappointment." (Def.'s Mot. for Judicial Recusal at 3; May 21. 2003 Tr. 40:19–21.)

### 3. Judge Moore's Subsequent Determination to Hear Attorney Rohn's Cases.

Shortly after Judge Moore had recused himself from all of Attorney Rohns cases, he withdrew his recusal in some cases, including the matters of *Selkridge v. United of Omaha Life Insurance Company*, V.I. Civil Action Nos.2001–143 and 2002–73, without giving a reason for this decision. (*See Selkridge v. United of Omaha Life Ins. Co.*, 237 F.Supp.2d 600 (D.Vi. Dec.20, 2002) (Moore, J.)). The *Selkridge* matters were subsequently dismissed by Judge Moore and are currently before the Third Circuit Court of Appeals. (Def.'s Reply in Support of Mot. for Judicial Recusal at 5–6.)

---

F.2d 894 (3d Cir.), *cert den.*, 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 151 (1983).

**4.** *See, e.g., In re Application for Change or Reassignment of Judge Pursuant to 28 U.S.C. Sec. 144 & 455*, 263 F.3d 56, 2001 WL 766884 (3d Cir. May 30, 2001); *In re Recusal Motion*, 118 F.Supp.2d 622, 624 (D.Vi.2000); *Saldana v. Kmart Corp.*, 84 F.Supp.2d 629 (D.Vi.1999), *aff'd in part, rev'd in part*, 260 F.3d 228 (3d Cir.2001).

**5.** The letter states, in part:
The failure of Judge Tom Moore to be recommended for reappointment has much

less to do with politics and more to do with the allegations of inappropriate behavior while on the bench.

. . . . .

These include but are not limited to, repeatedly being reversed by the Third Circuit, repeated disagreements with the judges of the third Circuit, rude behavior towards attorneys practicing before him, . . . repeated imposing sanctions without notice and a proper ability to respond, [and] being vindictive against litigants who took a position contrary to his.

.

Additionally, sometime after his recusals in Attorney Rohn's federal cases, Judge Moore sat on the appellate court panel which heard appeals from Attorney Rohn's Territorial Court cases,[6] despite her requests to disqualify himself.[7] According to Attorney Rohn, in the appellate matter of *Joseph v. Cosanco*, Judge Moore publically acknowledged that he read Attorney Rohn's letter and stated that he recused himself from her cases because he was angry with her. (May 21, 2003 Tr. at 46:15–19.) According to Attorney Rohn,

> [t]he gist of what he said from the bench was that he admitted that he had been very angry with me when I wrote the letter. That as a result of his anger he had recused himself from all of my clients' cases. That he now believed that he was not as angry and so he believed he could hear the cases, and that my attempts to continue to recuse himself were, "Just Lee Rohn being Lee Rohn."

(May 21, 2003 Tr. at 22:23–25, 23:1–5.)

Attorney Rohn, however, cannot present a certified transcript of Judge Moore's statement, even though the proceedings were tape-recorded. Attorney Rohn represents to the Court that the *Joseph v. Consanco* tape contains a background noise which has made it impossible for court personnel or local companies to transcribe it. (May 21, 2003 Tr. at 22:14–22, 47:6–18.)

**6.** Under local law, 4 V.I.C. § 33 (1997), and the Revised Organic Act, 48 U.S.C. § 1613a(a), appeals from the Territorial Court are heard by a three-judge panel of the Appellate Division of the District Court. *See BA Props. v. Gov't of the United States V.I.*, 299 F.3d 207, 210 (3d Cir.2002).

**7.** Judge Moore did recuse himself in some of these appeals. *See, e.g., Marcano v. Hess Oil Virgin Islands Corp.*, 237 F.Supp.2d 592, 593

## B. Procedural History

On December 17, 2002, Roebuck was indicted in a three count complaint stemming from the September 27th alleged altercation. (Def.'s Ex. A.) Specifically, Roebuck was charged with (1) assaulting a Deputy United States Marshal with a dangerous weapon in violation of 18 U.S.C. § 111; (2) attempted murder of a Deputy United States Marshal in violation of 18 U.S.C. § 115; and (3) interference with the official duties of a Deputy United States Marshal in violation of 18 U.S.C. § 115. (*Id.*)

The case was originally assigned to Chief Judge Raymond Finch, who on January 17, 2003, recused himself (Docket Entry No. 11; Def.'s Ex. B), and transferred the case to Judge Thomas Moore. (Docket Entry No. 12.) On February 10, 2003, Defendant Roebuck filed a Motion for Recusal of Judge Thomas J. Moore pursuant to 28 U.S.C. § 445(a). (Docket Entry No.17; Def.'s Ex. C.) According to the Motion, "Judge Moore has not only displayed a deepseated antagonism against Attorney Rohn, he has acknowledged the same." (Def.'s Mot. for Judicial Recusal at 2.) Accordingly, Defendant argues, due to the history of animosity between Judge Moore and Attorney Rohn, "no reasonable person could believe that he would be able to maintain impartiality with regard to this criminal case where Mr. Roebuck's liberty is at stake." (Def.'s Mot. for Judicial Recusal at 4).

n. 1 (D.V.I.App.Div.2003) (noting that although Judge Moore initially sat on the appeal considered September 28, 2001, he later recused himself and did not take part in the decision filed September 30, 2002 and later amended on January 30, 2003). Under the Local Rules, a judge sitting on an appellate panel is required to recuse himself, *inter alia*, where he "has a personal bias or prejudice concerning a party." V.I. Dist. Ct.App. Div. Internal Op. Proc. Rule 10.2.1(a).

On March 10, 2003, all pending motions, including the Motion for Judicial Recusal, were scheduled for a hearing before Judge Moore on April 4, 2003. (Def.'s Ex. D). On March 14, in preparation for the evidentiary hearing on the recusal motion, Defendant Roebuck filed the requisite Notice of Intent to Present Judicial Testimony at the April 4th hearing. (Docket Entry No. 25; Pl.'s Ex A1.) Defendant Roebuck then issued subpoenas to be served on every federal judge in the Territory to testify at the hearing or to produce certain records:[8] the Honorable Raymond L. Finch, Chief Judge of the Virgin Islands, the Honorable Thomas K. Moore, District Court of the Virgin Islands, the Honorable Geoffrey W. Barnard, Magistrate Judge, District Court of the Virgin Islands (Division of St. Thomas and St. John), and the Honorable Jeffery L. Resnick, Magistrate Judge, District Court of the Virgin Islands (Division of St. Croix). (Docket Entry Nos. 33–36; Pl.'s Ex B and B1;Def.'s Ex. E.) Defendant also served subpoenas on the law clerks of these Judges. Additionally, Attorney Rohn wrote to the Honorable Edward R. Becker, Chief Judge of the Third Circuit Court of Appeals, requesting he be deposed by telephone "to establish a factual record as to [Judge Moore's] statements as to articles I [Attorney Rohn] have written in the paper and the necessity of his recusing himself from all of my cases" which she intended to present at the April 4th recusal hearing. (Def.'s Ex. G.)

On March 19, the Government filed an Opposition to Defendant's Motion for Judicial Recusal and a Motion to Disqualify Attorney Lee Rohn as Counsel. (Docket Entry No. 26; Def.'s Ex. I). Additionally, a Motion and Memorandum for a Protective Order and to Quash Subpoenas was filed on March 24. (Docket entry No. 27; Def.'s Ex. J.) In response, Defendant requested the Motion for Protective Order and to Quash Subpoenas be reassigned to a judge who had not been subpoenaed as a witness (Def.'s Ex. L) and that all proceedings be stayed until the case could be reassigned. (Def.'s Ex. M.) On March 31, 2003, Judge Moore *sua sponte* quashed the subpoenas served on the law clerks as being unreasonable and unduly oppressive. (Docket Entry Nos. 42, 47, 48; May 21, 2003 Tr. at 7:13–17.) On April 2, 2003, Judge Moore granted Defendant's motion to stay. (Docket Entry No. 49.)

On May 5, 2003, this matter was assigned to this judge solely for the purposes of deciding the Motion for a Protective Order and to Quash. (Docket Entry No 52; May 21, 2003 Tr. at 5:7–9.) All other pending motions, including Defendant's Motion to Recuse and the Government's Motion to Disqualify Attorney Rohn, have been retained by Judge Moore. The Court heard oral arguments on Wednesday, May 21, 2003 in St. Croix via video conference, and in person on Tuesday, June 3, 2003 in St. Thomas. During the May 21 argument, Defendant withdrew his request to depose Chief Judge Becker. (May 21, 2003 Tr. at 73:14–15.)

## II. ANALYSIS

Defendant Roebuck contends the testimony of Judges Finch, Moore, Barnard, and Resnick is necessary to create a factual record in support of his Motion to Recuse. (Def.'s Opp'n Br. at 11; May 21,

---

**8.** For example, the subpoenas *duce tecum* of Magistrate Judge Resnick sought the following documents:

Any and all correspondence, e-mails, facsimiles, notes, letters and/or documents re- garding Judge Thomas K. Moore's opinion of Lee J. Rohn, Esquire and/or her letter to the editor of The Source regarding Judge Moore dated in February, 2003[sic].

2003 Tr. at 26:7–12.) According to Defendant, these individuals would give testimony which an objective person would consider evidence of bias towards Attorney Rohn and her clients. (May 21, 2003 Tr. at 52:2–8.) The Government vehemently opposes the enforcement of the subpoenas and argues that Defendant's proposed inquiry, although guised as factual, is an attempt to probe into the mental processes of Judge Moore when he recused himself from Attorney Rohn's cases beginning in September 2002. (Mot. to Quash at 5; May 21, 2003 Tr. at 10–11.) According to the Government, to allow such questions would disrupt the integrity and internal workings of the court. (Mot. to Quash at 5; May 21, 2003 Tr. at 9:15–21.)

 The overwhelming authority concludes that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); *Fayerweather v. Ritch,* 195 U.S. 276, 306–07, 25 S.Ct. 58, 49 L.Ed. 193 (1904); *Grant v. Shalala,* 989 F.2d 1332, 1344–45 (3d Cir. 1993); *see also Robinson v. Commissioner of Internal Revenue,* 70 F.3d 34, 38 (5th Cir.1995); *United States v. Edwards,* 39 F.Supp.2d 692 (M.D.La.1999). "[J]udges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed." *United States v. Cross,* 516 F.Supp. 700, 707 (M.D.Ga.1981), *aff'd,* 742 F.2d 1279 (11th Cir.1984). Further, only in the most extraordinary of cases, such as a strong showing of bad faith or improper behavior by a judge or quasi-judicial officer or where circumstances were such to overcome the presumption of regularity as to the acts of the decision maker, may a judge be questioned as to matters within the scope of his adjudicative duties. *Unit-*

*ed States v. Ianniello,* 740 F.Supp. 171, 178 (S.D.N.Y.1990) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *KFC Nat'l Management Corp. v. National Labor Relations Board,* 497 F.2d 298 (2d Cir.1974); *Beverly v. United States,* 468 F.2d 732, 743 (5th Cir.1972)). However, a judge may be called to testify to relevant maters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in question. *See Standard Packaging Corp. v. Curwood, Inc.,* 365 F.Supp. 134, 135 (N.D.Ill.1973).

The Government argues that any communication by Judge Moore to other members of the judiciary are protected as "thoughts and impressions" used in making a judicial decision. (Govt.'s Br. at 5–6.) "Any statements Judge Moore might have made to the other four Judges and their responses would all be part of the mental process of [Judge Moore] in reaching a judicial opinion" to recuse himself in Attorney Rohn's cases in September 2002. (*Id.*)

Defendant, on the other hand, maintains that he is not seeking to unearth Judge Moore's "mental impressions" but rather wishes to "inquire into the facts which led to Judge Moore's recusal" and his subsequent decision to withdraw his recusal in several of these cases, such as the *Selkridge* matters. (Def.'s Opp'n Br. at 9–10.) In support of this position, Defendant characterizes the holding of *Standard Packaging* as permitting factual discovery on how a judge reached a decision, so long as his beliefs or analysis are not probed. (Def.'s Opp'n Br. at 9; May 21, 2003 Tr. at 26:18–23, 29:7–13.) Defendant insists the testimony sought by the judges is factual in nature as Defendant "is not seeking Judge Moore's mental impressions in formulating his decision to recuse himself in all of Attorney Rohn's cases." (Def.'s

Opp'n Br. at 9–10.) Contrary to Defendant's suggestion, the court in *Standard Packaging* was clear that a judge may be called to testify to relevant matters of fact so long as the factually based questions do not probe into the mental processes employed in formulating the judgment in question. *See Standard Packaging*, 365 F.Supp. at 135. Thus, even factually based questions may be objectionable.

Defendant further relies on *Hamilton v. Vasquez*, 17 F.3d 1149 (9th Cir.1994), to support the blanket proposition that Judge Moore can be compelled to testify at the recusal hearing. (Def.'s Opp'n Br. at 9–10.) In *Hamilton*, a judge in a habeas corpus proceeding was properly called as a witness to testify regarding his observations of the defendant's behavior while he was shackled in the courtroom during trial. *Hamilton*, 17 F.3d at 1155. The situation presented by Defendant, however, is drastically different and distinguishable from *Hamilton* on its facts. Here, Defendant seeks the foundation for a judge's decision making process, not simply to ask questions regarding the observations made by a witness who happened to be a judge. In response to the Court's order to provide proposed questions to be asked of Judge Moore, Defendant submitted following:

1. (a) Name, address and occupation, (b) length of time in that occupation and (c) prior employment and types of legal work.

2. How he first came to know Lee J. Rohn and whether he has heard comments or information about her prior to that and if so what?

3. Whether he has ever made any extrajudicial statements regarding Lee J. Rohn or her firm, when, to whom, and the substance of the statements?

4. Whether he has ever been told by anyone of statements attributed to Lee J. Rohn or her firm about him, if so when, from whom, and the substance of what he was told was said?

5. Whether he ever learned that Lee J. Rohn or any member of the firm was attempting to prevent and/or lobbying against, his reappointment to the judgeship and if so when, from whom and the substance?

6. Whether he has received statements from third parties about Lee J. Rohn or the members of her firm made outside the context of a court proceeding and if so when, from whom and the substance?

7. Whether there came a time Judge Moore learned that Lee J. Rohn had written a letter to the editor contrary to his reappointment, if so when, how it was brought to his attention, whether he discussed it with others and what was the substance of all such conversations?

8. All extrajudicial discussions concerning Lee J. Rohn or members of her firm in the past 3 years, the approximate date, who with, and the substance of such conversations.

9. Whether Judge Moore requested anyone to write favorable letters concerning him or to take any action on his behalf to help his reappointment to the bench, and if so, of whom and the substance of the request.

10. The facts considered before recusing himself from all of the cases on his docket of which Lee J. Rohn or her office were counsel of record. The facts considered to nullify the recusal in the *Selkridge* matter and then to dismiss all that Plaintiff's claims.

11. The factual knowledge as to the damage that would be done to the clients of Lee J. Rohn as a result of

the recusal, including loss of trial dates, inability to have motions ruled on and the like.

12. Any statement made or correspondence as to the reasons for the recusals, when made, to whom and the substance.

13. The factual basis for the statement made by Judge Moore on the record in the appeal of Joseph v. Cosanco; the fact that supports the statement made at the time that Judge Moore was angry at Attorney Rohn when he recused himself from her cases, but now is not, and what he factually meant by "That is just Lee J. Rohn being Lee J. Rohn."

14. The factual basis for the position that if Judge Moore were allowed to resume hearing cases in which Lee. J. Rohn or her firm were counsel of record, he would not again damage her clients should he get angry with Attorney Rohn again.

15. All other motions to recuse filed against Judge Moore in the past 3 years and the results.

16. The facts as to whether Judge Moore is offended by the several motions to recuse Judge Moore filed by the Law Offices of Lee J. Rohn and whether he has discussed the same with anyone, and if so who, when and the substance.

17. The factual basis to quash the subpoenas issued to the judges' law clerks *sua sponte* and the factual basis to state without a hearing that the subpoenas were unreasonable and oppressive. To whom Judge Moore discussed such subpoenas or the belief that Attorney Rohn was oppressive in having issued the same, when, and the substance, the factual basis to make such a statement without a hearing, and whether the issuance of such subpoenas cause Judge Moore any personal feeling, and if so what.

18. What Judge Moore said to the process server regarding these subpoenas?

19. The facts surrounding why Judge Moore has decided to hear cases involving the office of Lee J. Rohn again and whether it is any way tied to his hopes of reappointment.

(Docket Entry No. 57, List of Proposed Questions for Judge Thomas K. Moore and to All Other Persons Subpoenaed). Defendant further indicated that similar questions would be asked of Judges Finch, Barnard and Resnick to determine the content of conversations Judge Moore may have had with them regarding the August 2002 Letter to the Editor and Judge Moore's reaction to its contents. (*Id.* at 3.)

A search by this Court revealed no case where a judge has been required to submit to discovery or compelled to testify in connection with a motion for his disqualification.[9] *See* 50 Am.Jur. Proof of Facts 3d 499, Disqualification of Trial Judge for Cause § 41, *Discovery Directed to a Challenged Judge; see also Cheeves v. Southern Clays, Inc.*, 797 F.Supp. 1570, 1580–81 (M.D.Ga.1992) (holding that presiding

---

9. There have been cases, however, where judges *voluntarily* testified at a recusal hearing, gave sworn statements, or agreed to submit to a deposition. *See, e.g., United States v. Ianniello*, 740 F.Supp. 171, 186–87 (S.D.N.Y. 1990) (judge submitted affidavit at the request of appellate court); *Cheeves v. Southern Clays, Inc.*, 797 F.Supp. 1570 (M.D.Ga.1992) (discussing the decision reported without an opinion in *Health Serv. Acquisition v. Liljeberg*, 747 F.2d 1463 (5th Cir.1984) where judge participated in deposition); *Matter of Marriage of Benson*, 141 Or.App. 458, 919 P.2d 496, 498 (1996) (judge testified at recusal hearing held before different judge).

judge could not be subject to compulsory discovery to support party's motions to disqualify). As stated above, the general rule in any case is that litigants may not probe into a judge's mental process. *See, e.g., Robinson,* 70 F.3d at 38 (quashing subpoena to compel judge to testify about mental process in reaching a judicial opinion); *Gary W. v. State of Louisiana, Dep't of Health & Human Resources,* 861 F.2d 1366 (5th Cir.1988) (upholding lower court's quashing of subpoena to depose special master appointed by court).

■ The Court finds that Judge Moore cannot be compelled to answer the questions proposed by Defendant as the information sought falls directly within the prohibition established by *Morgan* and its progeny. *See Morgan,* 313 U.S. at 421–422, 61 S.Ct. 999; *Robinson,* 70 F.3d at 38; *Edwards,* 39 F.Supp.2d at 706 (M.D.La. 1999); *Cross,* 516 F.Supp. at 707. The law is clear that "a judge is not required to explain any of his decisions nor to divulge reasons which may have motivated his actions or opinion." *Edwards,* 39 F.Supp.2d at 706.

■ Attorney Rohn believes that because the tape in *Joseph v. Cosanco* has not been able to be transcribed, she is entitled to question Judges Finch and Moore about Judge Moore's so-called "confession." (May 21, 2003 Tr. at 31:7–11.) Attorney Rohn continues that she "is entitled to find out factually" what Judge Moore meant when he stated "that's just Lee Rohn being Lee Rohn." (*Id.* at 31:12–20.) The Court rejects Defendant's argument that the lack of transcript of the *Joseph v. Cosanco* constitutes the extraordinary circumstances which would justify compelling Judge Moore to answer questions regarding reasons for his decision to sit on the three-judge appellate panel hearing the case.

■ "While a judge enjoys no privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony." *United States v. Dowdy,* 440 F.Supp. 894, 896 (W.D.Va.1977) (quashing subpoena that would have required judge to appear as a witness in perjury prosecution where defendant failed to show extraordinary circumstances justifying examination of a judge's decision-making process) (quoting *United States v. Valenti,* 120 F.Supp. 80 (D.N.J.1954)). Simply putting the word "factually" before a request for information does not make that information discoverable under the case law. *See United States v. Cross,* 516 F.Supp. 700, 708 (M.D.Ga.1981); *Standard Packaging,* 365 F.Supp. at 135. With regard to the *Joseph v. Cosanco* matter in which there are no transcripts of the appellate hearing available and the tape recording of the proceedings is inaudible, Defendant can submit affidavits of others who were present, including her co-counsel and her adversary in the case. As Attorney Rohn concedes, there were several non-judicial witnesses to Judge Moore's statement and sworn statements can be obtained from these individuals in an attempt to reconstruct the record in support of Defendant Roebuck's Motion for Judicial Recusal. (May 21, 2003 Tr. at 57:20–25.)

Additionally, Rule 10(c) of the Federal Rules of Appellate Procedure provides a procedure for litigants to follow when no transcript is made of a proceeding.[10] FED. R.APP. P. 10(c); *see also* 29 AM JUR.2D, EVIDENCE § 761 (noting that in the event a

---

10. The Rule provides:
 **Statement of the Evidence When the Proceedings Were Not Recorded or When a** **Transcript Is Unavailable.** If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the

written record was not made of a proceeding, individuals who heard the testimony, such as attorneys, should be called to create record). Rule 10(c) requires a party to prepare a "statement of the evidence" from the best available means. FED. R.APP. P. 10(c). This statement is then served on the party's adversary, who reviews it for accuracy and prepares objections or proposed amendments to the statement. *Id.* The statement and objections are next submitted to the district court for approval and the determination of the court constitutes the record on appeal. *Id.; see also United States v. Keskey,* 863 F.2d 474 (7th Cir.1988); *United States v. Mills,* 597 F.2d 693 (9th Cir. 1979). Counsel for either side has failed to pursue this course to supplement the record so that the court considering Defendant's motion to recuse can meaningfully evaluate this evidence. Thus, because all options have not been explored, the fact that the tape at this time has not been transcribed does not presented a rare instance where a judge can be compelled to testify. Moreover, Attorney Rohn has assured the Court that she is pursuing off-island experts to extract the offending background noise so the tape can be accurately transcribed. (June 3, 2003 Tr. at 9, 13.)

The prohibition against compelling the testimony of a judge is to protect the integrity of the legal system itself. *See Terrazas v. Slagle,* 142 F.R.D. at 136, 139 (W.D.Texas 1992) (granting motion to quash subpoenas for oral depositions served on judicial law clerks). To allow such an inquiry would establish a dangerous precedent which would erode the Court's foundation. *See id.* (commenting

that "public inquiries by the litigants as to the internal operations and communications of the Court will, not may, destroy the integrity of our present legal system."). "Should a judge be vulnerable to subpoena as to the basis for every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning." *Dowdy,* 440 F.Supp. at 896. There is little doubt that such inquiries would severely obstruct judicial business in the Territory. *See Morgan,* 313 U.S. at 422, 61 S.Ct. 999 (noting that an examination into a judge's reason for an opinion "would be destructive of judicial responsibility"); *Cheeves,* 797 F.Supp. at 1583 (allowing such inquiries would invite "manipulated harassment" and, at a minimum, cause delays in litigation); *see also Washington v. Strickland,* 693 F.2d 1243, 1263 (5th Cir.1982) *rev'd on other grounds,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (rejecting evidence about a judge's mental process because "the finality and integrity of judgments would be threatened by a rule that enabled parties to attack a judgment by probing the mental process of a judge").

■ Further, the Court has considered less drastic alternatives to quashing, such as limiting the scope of inquiry, which is generally preferred to outright quashing. *See* FED.R.CRIM.P. 17(c). However, it is difficult to see how the questions proposed by Defendant Roebuck can be modified in any fruitful manner so that Judge Moore's responses would not go to the heart of his thought process. As the court in *Standard Packaging* observed, even though a inquiry is factually directed, it may still be

evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 10 days after being served. The statement and any

objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal. FED R.APP. P. 10(c).

objectionable if it invades upon a judge's decision-making prerogative. *Standard Packaging*, 365 F.Supp. at 135. Most, if not all, of Defendant's proposed questions attempt to elicit the underlying reasons for Judge Moore's decisions. Thus, reducing the scope of the subpoenas would not alleviate the concerns of the Court.

Moreover, the Court explored the alternative of having the parties stipulate certain facts so that the need for the subpoenas would be eliminated. (June 3, 2003 Tr. at 4:11–13.) For example, all parties agree the question of whether Judge Moore read Attorney Rohn's letter or had knowledge of its contents is a proper factual based question which can be answered without probing into the judicial making process.[11] (*See* May 21, 2003 Tr. at 18–19.) Under Virgin Islands law, 4 V.I.C. § 285, whenever a judge has knowledge of a fact that would disqualify him from hearing a case, he has the duty to disclose this factual information. Specifically the statute provides that,

> Whenever a judge shall have knowledge of any fact which, under [4 V.I.C. § 284], disqualifies him to sit or act as such in any action or proceeding pending before him, it shall be his duty to declare the same in open court and cause a memorandum thereof to be entered in the minutes. It shall thereupon be the duty of the clerk to transmit forthwith a copy of such memorandum to each party or his attorney who shall have appeared in such action or proceeding, except such parties as are present in person or by attorney when the declaration is made.

4 V.I.C. § 285. While this statute only applies to situations which would disqualify a judge under 4 V.I.C. § 284 [12] and Defendant brings his Motion for Judicial Recusal under federal law, 28 U.S.C. § 455 (*see* Def.'s Ex. C), under the ABA's Model Code of Judicial Conduct,[13] when the issue

---

**11.** The exchange between the Court and counsel was as follows:

> THE COURT: Question to a Judge, did you have possession of a letter written by Ms. Rohn on such and such a date involving you? ... Is that barred from having testimony to a judge saying yes or no.
> MS. MUNOZ: No. No, Your Honor, it is not.
> THE COURT: In other words, a judge can be asked did you see that letter? Did you read that letter? Okay.
> MS. MUNOZ: Yes.
> THE COURT: And you stop there. You can't say, did you use that letter reaching a determination on something.
> MS. MUNOZ: No.
> THE COURT: You can't ask that question?
> MS. MUNOZ: That goes to mental process.
> THE COURT: But we can ask the question whether or not [Judge Moore] had read the letter, had knowledge of the letter, that's a fact?
> MS. MUNOZ: That's a fact.
> THE COURT: Correct?
> Ms. MUNOZ: Yes.
> THE COURT: So you in effect, you could not object to that?

> MS. MUNOZ: To the first question that you made, no.

May 21, 2003 Tr. at 18:13–25; 19:1–16.

**12.** Under this statute, a judge must disqualify himself in any action or proceeding:

> (1) To which he is a party or in which he is primarily interested;
> (2) When he is related to either party, or to an officer of a corporation which is a party, by blood or marriage within the third degree;
> (3) When in the action or proceeding or in any prior action or proceeding involving the same issues, he has been of counsel for any party to the action or proceeding; or
> (4) When it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him.

4 V.I.C. § 284.

**13.** The District Court has adopted the Code of Judicial Conduct. *See* LRCr 1.2 (applying Local Rules of Civil Procedure to matters not covered by the Local Rules of Criminal Procedure); LRCi 83.2(a)(2) ("The Code of Judicial Conduct of the American Bar Association

of recusal is before him, a judge should disclose "on the record [any] information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification," *even if* the judge does not personally feel the circumstances mandate his recusal. MODEL CODE OF JUDICIAL CONDUCT, Cannon 3E(1) Commentary (2000).

At the June 3, 2003 hearing, the Court asked counsel whether Judge Moore would be willing to agree that he saw the letter and recused himself because of its contents. (June 3, 2003 Tr. at 4:11–13.) However, this option could not be pursued by the Court, since Judge Moore and special counsel for the Government apparently have never spoken.[14] (*Id.* at 4:14–17.)

■ Finally, the Court notes that Defendant is not left without a remedy. As Defendant points out (*see* Def.'s Opp'n Br. at 10–12), the standard for judicial recusal under the Judicial Disqualification Act, 28 U.S.C. § 455(a), is an objective one. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 148 F.3d 283 (3d Cir.1998); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026 (3d Cir. 1997); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987); *United States v. Dalfonso*, 707 F.2d 757(3d Cir.1983); *In re Recusal Motion*, 118 F.Supp.2d 622, 624 (D.Vi. 2000). Recusal is mandated where a rea-

sonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality, even if the judge has no actual personal bias or prejudice and is confident that the circumstances would not influence him in any way. *Dalfonso*, 707 F.2d at 760; *United States v. Nobel*, 696 F.2d 231 (3d Cir.1982); *see also German v. Federal Home Loan Mortg. Corp.*, 943 F.Supp. 370 (S.D.N.Y.1996). Thus, Defendant Roebuck is not required to show that Judge Moore *actually* harbors bias or prejudice, but only that a neutral observer, with knowledge of all relevant facts, would have a reasonable basis to question his impartiality.

■ Although it is difficult to prove the contents of a judge's mind, there are numerous ways Defendant can meet this standard through a foundation of admissible evidence without Judges Finch, Moore, Barnard, and Resnick testifying or producing the documents sought by Defendant. *See Edwards*, 39 F.Supp.2d at 706 (denying recusal motion on the basis that defendants sought to call judge as a witness because facts and evidence were available from non-judicial sources); *Cheeves*, 797 F.Supp. at 1582, 1584 (holding that in a motion to disqualify, it is unnecessary to compel judges to produce discovery concerning communications with presiding judge if other witnesses or documents are known); 13A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3550 (observing that litigants moving for recusal under 28 U.S.C. § 455 may support their motion with affidavits, verified memoranda, or

shall govern the conduct of the judges of this court, subject to such modification as may be required or permitted by federal statute, regulation, court rule or decision of law.'').

**14.** The Court specifically inquired of special counsel whether she could stipulate certain facts which would assist in the determination of this motion to quash. (June 3, 2003 Tr. at 4.) She responded that she had not spoken to

the judges and thereby precluded any further response to the Court's questioning. That fact notwithstanding, in these proceedings Attorney Rohn's statements regarding Judge Moore and her actions to defeat his reappointment are fully set forth in Defendants Motion for Judicial Recusal and we can infer that the contents of that motion are fully known by Judge Moore. (*See* Def.'s Mot. for Judicial Recusal, Ex. 1.)

other factual statements); *see also United States v. Ianniello,* 740 F.Supp. 171, 187–90 (S.D.N.Y.1990) (holding defendant had failed to show the necessity required to compel testimony of a judge). While rumors, hearsay, speculation, and unfounded accusations will not suffice as grounds for disqualification, courts recognize that a case for recusal due must be made inferentially, through non-judicial witnesses and from circumstantial and collateral evidence, because discovery cannot be sought directly from judicial officers. *See* 50 AM. JUR. PROOF OF FACTS 3d 499, DISQUALIFICATION OF TRIAL JUDGE FOR CAUSE § 41, *Discovery Directed to a Challenged Judge.* As one practitioner's guide notes:

Since the modern day standard requires recusal upon even a question over the judge's impartiality, and since the judge is duty bound to recuse any time the call is even close, all that should be required in the moving papers is an unvarnished statement of the grounds, written in the language of the statute or rule, supported by an austere statement of the circumstances. The moving papers must contain a statement of facts, and the facts must constitute a recognizable basis for disqualification under the rule or statute applicable to the jurisdiction....

50 AM.JUR. PROOF OF FACTS 3D 499, DISQUALIFICATION OF TRIAL JUDGE FOR CAUSE § 28, *Formal Motion to Recuse.*

▬ While a mere conclusory affidavit is not enough to base a motion for a judge's disqualification,[15] Defendant Roebuck has the ability to put forth specific facts and circumstances to establish Judge Moore's alleged animosity towards Attor-

ney Rohn and to demonstrate that it is severe enough to impact his right to a trial before an impartial and disinterested judicial officer. *See* 54 A.L.R.5th 575, DISQUALIFICATION OF JUDGE FOR BIAS AGAINST COUNSEL FOR LITIGANT § 2(a) (1997). Although a second federal recusal statute 28 U.S.C. § 144 is not applicable to the District Court in the Virgin Islands,[16] cases discussing recusal under this statute provide helpful guidance to determine what evidence is available to support Defendant Roebuck's Motion for Judicial Recusal. To be legally sufficient under 28 U.S.C. § 144, an affidavit must state the grounds for a judge's disqualification with particularity (*United States v. Rosenberg,* 806 F.2d 1169, 1173 (3d Cir.1986) *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987)), and provide definite factual assertions supporting movant's position, including times, places, and circumstances. *United States v. Vespe,* 868 F.2d 1328 (3d Cir.1989); *United States v. Townsend,* 478 F.2d 1072, 1074 (3d Cir.1973); *Dembowski v. New Jersey Transit Rail Operations, Inc.,* 221 F.Supp.2d 504 (D.N.J.2002); *Grand Entertainment Group, Ltd. v. Arazy,* 676 F.Supp. 616 (E.D.Pa.1987).

Lack of impartiality, personal animus or hostility towards Attorney Rohn and her clients can be shown by sworn statements, affidavits or testimony of individuals who support Attorney Rohn's allegations that Judge Moore was irritated or angry at her for writing the Letter to the Editor published in the St. Croix Source. *See, e.g.,* 50 AM.JUR. PROOF OF FACTS 3d 499, DISQUALIFICATION OF TRIAL JUDGE FOR CAUSE §§ 53–57, *Appearance of Animosity* (presenting illustrative scenario where an attorney-wit-

15. *See, e.g., United States v. Vespe,* 868 F.2d 1328, 1340 (3d Cir.1989).

16. The statute is not applicable since the Virgin Islands District Court was not established under Article III of the United States Consti-

tution. *See In re Recusal Motion,* 118 F.Supp.2d 622, 624 (D.Vi.2000) (Moore, J.) (citing *Government of Virgin Islands v. Gereau, et. al.,* 502 F.2d 914, 931 (3d Cir.1974), *Callwood v. Callwood,* 127 F.Supp. 179, 180 (D.Vi.1954)).

726

ness testifies on a judge's animosity towards counsel). Such affidavits or testimony if based on personal knowledge, with adequate foundation, and containing a specific statement of facts demonstrating the circumstances upon which the allegation of bias is premised would give rise to an inference of bias or prejudice as Defendant alleges. Such evidence would rise above blanket allegations of Judge Moore's inability to be impartial in cases involving Attorney Rohn's law firm.

### III. *CONCLUSION*

 For the foregoing reasons, the Court finds Judge Moore cannot be compelled to testify as to the facts underlying his determination to recuse himself from Attorney Rohn's cases beginning in September 2002, his decision to issue an opinion in the *Selkridge* matters, or his quashing of the subpoenas on the law clerks, as such matters go to his mental processes. Additionally, the Court finds that on the facts of this case the testimony of Judges Finch, Moore, Barnard, and Resnick or the production of documents by them would serve no useful purpose in light of the information already contained in the record and information which can be further provided to the Court. Accordingly, the Government's Motion for a Protective Order and to Quash is granted. An appropriate order will follow.

### ORDER ON GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENAS

**THIS MATTER** having come before the Court on the Government's Motion for a Protective Order and to Quash Subpoenas;

The Court having reviewed the record and the submissions of the parties and after hearing oral arguments;

For the reasons stated in the Court's opinion on this date;

**IT IS** on this *15th* day of July, 2003 hereby

**ORDERED** that the Government's motion is **GRANTED** and the subpoenas issued to the Honorable Raymond L. Finch, Chief Judge of the Virgin Islands, the Honorable Thomas K. Moore, District Court of the Virgin Islands, the Honorable Geoffrey W. Barnard, Magistrate Judge, District Court of the Virgin Islands, and the Honorable Jeffery L. Resnick, Magistrate Judge, District Court of the Virgin Islands, to compel their attendance or testimony at an evidentiary hearing on Defendant Roebuck's Motion to Recuse are **QUASHED**;

**IT IS FURTHER ORDERED** that a protective order is hereby entered preventing the service of any further subpoenas on the above-named Judges with respect to the issues determined herein.

No costs.